**William David BLANKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–96–00087–CR.**

Court of Appeals of Texas,
Texarkana.

Feb. 20, 1998.

Argued Jan. 29, 1998.

Decided Feb. 20, 1998.

Charles Stephen Johnson, Houston, for appellant.

Eric E. Kugler, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

William David Blanks was charged with aggravated robbery. A jury found him guilty, and he was sentenced to ninety-nine years in prison. Blanks brings seven points of error. Six of the seven points challenge the use of Blanks' confession at trial. Blanks asserts that his confession was the result of custodial interrogation; that he was not informed of his *Miranda*[1] rights before giving the statement; and that his statement was procured by illegal acts of the police, including inducements and threats. The remaining point of error claims that the trial court erred by allowing perjurious testimony from a sheriff's deputy regarding the reading of the *Miranda* warnings to Blanks.

### Background

On March 16, 1991, the Harris County Sheriff's Department opened a homicide investigation into the murder of Steve Gavranovic, who was found dead of a gunshot wound to the head, in a vehicle on a deserted street in Harris County. A few days later, on March 20, Paul Castagnola contacted the Houston Police Department and stated that he had information regarding the murder of Steve Gavranovic. Houston police officer Jeff Fondon and his partner met Castagnola at a local pool hall the following day. Castagnola revealed that he had seen Gavranovic on the night of the murder. Officer Fondon asked Castagnola if he would be willing to come to the northwest substation so that Fondon could contact the Harris County Sheriff's Department and share the information with them. Castagnola agreed. The appellant, Blanks, was with Castagnola at the pool hall. Castagnola told Officer Fondon that their car was broken down and asked if Fondon would give him and Blanks a ride to the substation. Officer Fondon agreed.

Once at the substation, Officer Fondon called Deputy Dear of the sheriff's department and told him he had people at the station who may have information about the Gavranovic case. Dear and his partner, Deputy Terry Simmons, arrived at the substation

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

approximately thirty minutes after the call from Officer Fondon.

Deputies Simmons and Dear spoke briefly with Castagnola and discovered that he was likely the last person to have seen the murder victim alive. Deputy Simmons asked Castagnola if he would be willing to come to the sheriff's station to make a statement. Castagnola told the deputies that Blanks had also been with him at the time he last saw Gavranovic and asked if they would like to talk with him as well. The deputies said that they would. Castagnola introduced the deputies to Blanks, who also agreed to go to the sheriff's station to make a statement. Blanks stated that he did not have enough gas to drive his own vehicle to the station, so the deputies agreed to transport Castagnola and Blanks to the station and then transport them back to their vehicle when they were through making their statements.

At the station, Deputy Simmons interviewed Blanks, while Deputy Dear interviewed Castagnola. When taking the statement from Blanks, Simmons used a preprinted form titled "Voluntary Statement." This form did not contain the *Miranda* warnings, although it did contain a warning against perjury. Deputy Simmons testified that this type of form was used to take the statements of persons who are merely witnesses and not suspects. Suspects' statements were taken down on a form entitled "Statement of a Person in Custody." This form did contain the *Miranda* warnings.

Blanks' statement was typed on an electric typewriter. Blanks stated that he had last seen Gavranovic on Friday, March 15, 1991, at approximately 8:00 p.m. He stated that he and Castagnola met Gavranovic so that Gavranovic could pay Castagnola money that he owed. They all met at a local convenience store, the money was paid to Castagnola, and then they all left.

After taking the statement, Blanks and Castagnola agreed to take polygraph examinations. After the examinations, the poly-

graph examiner told Deputies Simmons and Dear that he thought Blanks and Castagnola were not being truthful. Deputy Simmons confronted Blanks with this opinion. Blanks confirmed that he had not been completely truthful and stated that he wished to give another statement.

Deputy Simmons began this statement on a new "Voluntary Statement" form which he inserted into the typewriter. Simmons testified that, toward the bottom of the first page of the statement, Blanks again wanted to change his statement. The changes were substantial changes to portions of the statement which Deputy Simmons had already typed. Simmons testified that he destroyed the statement he had been working on and began a third "Voluntary Statement" form so that he could record the changes Blanks wanted to make. Before Simmons had typed in the identifying information, Deputy Dear interrupted and requested to speak with Simmons. Simmons asked Deputy Welsh to take over and to type what Blanks had to say, but asked Welsh to refrain from interrogating Blanks. Deputy Welsh had typed one paragraph by the time Simmons returned. When Simmons returned, he told Blanks that Castagnola had admitted his involvement in the murder. Simmons then gave Blanks another opportunity to change his statement. Blanks then made oral statements which implicated himself as a suspect in the murder. Deputy Simmons testified that he immediately read Blanks the *Miranda* warnings. After questioning Blanks to confirm that he understood these rights, Deputy Simmons asked if he would give a statement about his involvement in the death of Gavranovic. Blanks agreed.[2]

Deputy Simmons then testified that he transferred the paragraph already typed by Deputy Welsh from the "Voluntary Statement" form to a "Statement of a Person in Custody" form. He did this by cutting off the top portion of a person in custody form, which contains the *Miranda* warnings, and placing this portion of the person in custody

---

**2.** Although Simmons admits that he told Blanks that Castagnola had admitted his role in the crime, Simmons testified that he did not relate any specific details to Blanks regarding what

Castagnola had said. Simmons testified that he simply let Blanks give his statement without prompting him with any details which he had learned from Castagnola's admission.

form over the top portion of the voluntary statement form, and making a copy of the form. Thus, it appeared as if the typewritten statement had been made on a person in custody form. A faint line appeared under the last paragraph of the *Miranda* warnings, which indicated that a cut and copy procedure was performed on the form. Deputy Simmons later asked Blanks to initial the person in custody statement in the left and right margins where the faint line appeared to indicate that he was aware of the copy procedure that had been used to produce the "Statement of a Person in Custody."

Deputy Simmons also testified that he had Blanks read back to him the *Miranda* warnings which now appeared at the top of the statement and initial each one of those as well. Simmons testified that Blanks never invoked any of those rights.

Deputy Simmons testified that he then inserted the "Statement of a Person in Custody" form which he had just created into the typewriter and proceeded to type the remaining portion of Blanks' statement. Simmons repeatedly confirmed during his testimony that Deputy Welsh had only typed the first paragraph of the statement. After completing the statement, Simmons testified that Deputies Dear and Welsh witnessed Blanks sign the statement. Deputy Simmons further testified that neither he nor anyone else coerced, threatened, or made promises to Blanks in exchange for his statement. However, Simmons did testify that, when he was told by the polygraph operator that Blanks was not being truthful, and prior to taking Blanks' "Statement of a Person in Custody," he told Blanks that he might be used as a witness for the State and that he needed to get more information from him.

In this last statement, Blanks admitted that he and Castagnola had talked of "ripping off" a drug dealer because they needed money. Castagnola called Gavranovic and set up a deal for $240.00 where Castagnola would act like he had acid to sell and would take the money from Gavranovic.[3] The meeting was set up at a local convenience store. Blanks dropped off Castagnola and

drove behind the store so that Gavranovic would not see him. Blanks and Castagnola had already chosen the deserted street where they would lead Gavranovic after meeting at the store. Castagnola and Gavranovic got into Gavranovic's vehicle, and Castagnola directed him to the empty street. Blanks drove his vehicle to the location and pulled in behind Gavranovic. Castagnola got out of Gavranovic's car, walked back to Blanks, and gave him $240.00. He then went back to Gavranovic's vehicle. Blanks then heard a "pop," and Castagnola came back and got in the car with Blanks. Castagnola put Blanks' .357 pistol back into its holster and put it underneath the seat. Blanks and Castagnola then split the money evenly between them. The two went back to Blanks' house, and Blanks put the pistol into a file box on top of some shelves in his garage.

Having disclosed the location at his home where the murder weapon could be found, Blanks then signed a consent to search and seize form, which permitted the sheriff's department to recover the weapon from Blanks' home. The weapon was located where Blanks stated that it would be found.

Deputy Simmons testified that Blanks was free to leave up until the time he called the district attorney's office following the taking of the statement and the district attorney agreed to file charges.

At trial, Blanks testified on his own behalf. He denied any involvement in the planning of or the murder of Gavranovic. He stated that he was merely providing transportation to Castagnola so that Castagnola could pick up some money owed to him by Gavranovic. Blanks also testified that he did not know how Castagnola came into possession of the .357 which Blanks owned and generally kept in his truck. He presumed that Castagnola knew where the gun was located and took it without his permission. Blanks also admitted that parts of the initial voluntary statement he gave to Deputy Simmons were untrue. He testified that he gave the statement so that Castagnola would confess. He further testified that he felt

---

3. Although Blanks said the two talked about "ripping off" a drug dealer, he apparently meant that the two intended to "rip off" a drug purchaser by taking the purchase money.

that if he told the truth to Simmons, Castagnola might retaliate against him or his family. Although Blanks testified that he went to the sheriff's office voluntarily, he also testified that he did not feel free to leave until he shared all the information he knew about the incident. Blanks testified that the *Miranda* warning was not read to him before completing the "Statement of a Person in Custody" or before giving consent to search his house for the murder weapon.

The trial court filed findings of fact and conclusions of law stating that Blanks gave his statement voluntarily. The trial court further noted that Blanks was not coerced or intimidated and that he was not in custody at the time he gave his statement, but was present voluntarily and that he was properly informed of his statutory warnings as required by TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979). The trial court found that Blanks understood these warnings and continued his statement and that Blanks knowingly, intelligently, and voluntarily waived all the rights set out on the "Statement of a Person in Custody" form.

The trial court further found that information given by Blanks in his statement led to the recovery of the murder weapon at the location where Blanks divulged that it could be found, therefore making his statement admissible pursuant to TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 1979).

These findings of fact and conclusions of law were virtually identical to findings and conclusions made by another trial judge concerning Blanks and this same statement in a prior judicial proceeding.

### Analysis

In his first two points of error, Blanks argues that the trial court erred in refusing to suppress his confession and in admitting the confession into evidence. Blanks claims that the statement was the result of custodial interrogation and that he was not read *Miranda* warnings prior to giving the statement. A trial court's ruling on a motion to suppress lies within the sound discretion of that court. At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the

weight to be given their testimony. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim. App.1996). We must view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Id.* We should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case.

We first consider whether Blanks was in custody at the time he gave his statement. A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California,* 511 U.S. 318, 321–24, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293, 298–99 (1994). The "reasonable person" standard presupposes an innocent person. *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389, 400 (1991); *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App.1996). The custody determination is based entirely upon objective circumstances, which include whether there is probable cause to arrest and the focus of the investigation. *Stansbury,* 511 U.S. at 321–23, 114 S.Ct. at 1528–29, 128 L.Ed.2d at 298; *Dowthitt,* 931 S.W.2d at 254. Other factors, such as the subjective intent of the police and subjective belief of the defendant, are not relevant unless they are manifested by words or actions of law enforcement officers. *Dowthitt,* 931 S.W.2d at 255. Station house questioning does not, in and of itself, constitute custody. *California v. Beheler,* 463 U.S. 1121, 1124–25, 103 S.Ct. 3517, 3519–20, 77 L.Ed.2d 1275, 1279 (1983); *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *Dancy v. State,* 728 S.W.2d 772, 778 (Tex. Crim.App.1987); *see also Russell v. State,* 717 S.W.2d 7, 11 (Tex.Crim.App.1986). Further, custody does not occur merely because the suspect submits to and fails a polygraph test. *Shiflet v. State,* 732 S.W.2d 622, 631

(Tex.Crim.App.1985). However, the mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation. *Ussery v. State,* 651 S.W.2d 767, 770 (Tex.Crim.App.1983).

As to the two objective factors which establish custody, whether there was probable cause to arrest and upon whom the investigation was focused, Blanks argues that there was probable cause to arrest him after the polygraph operator told the deputies that he did not believe Blanks was being truthful about his involvement in the robbery and murder of Gavranovic. This fact alone will not establish probable cause.

Blanks also argues that there was probable cause to arrest him after he admitted being present when Gavranovic was killed. Deputy Simmons testified that he administered *Miranda* warnings to Blanks immediately after Blanks made these admissions and then proceeded to take Blanks' statement. Blanks disputed Simmons' testimony and testified that he was not warned until after he had completed his statement. In its findings of fact and conclusions of law, the trial court found that Blanks was immediately given his statutory warnings when he began to implicate himself in the crime.

We agree with Blanks that, at the time he made oral statements which implicated himself, the inquiry turned into a custodial interrogation. This is because at that point and time there was probable cause to arrest Blanks, and he was certainly a focus of the investigation. However, Simmons testified, and the trial court found, that Blanks was immediately given the statutory warnings before any other statements were made. The inculpatory statements contained in the "Statement of a Person in Custody" were taken after Blanks had received the appropriate warnings and waived his rights. Although Blanks was in custody, he was properly warned before giving the statement which was admitted at trial. The trial court did not abuse its discretion in admitting the statement. Points of error one and two are overruled.

In his third and fourth points of error, Blanks asserts that the trial court abused its discretion when it overruled his motion to suppress and admitted his confession into evidence because the statement was procured through the illegal acts of Deputy Simmons. By illegal acts, Blanks is referring to the cut and copy procedure Deputy Simmons performed on Blanks' third statement, which was started on a "Voluntary Statement" form and then transferred to a "Statement of a Person in Custody" form. Blanks argues that since the statement was begun on a "Voluntary Statement" form, it must be presumed that he was not advised of his *Miranda* rights before giving the statement and that he did not initial the warnings before completing the statement. Simmons testified that he did warn Blanks at the point when he implicated himself. Simmons testified that this is when he performed the cut and copy procedure. Blanks claims that he was not warned until after the statement was completed and then the statement was copied onto the form with the warnings. In support of this contention, he points to an analysis performed by the Texas Department of Public Safety which concluded that all four paragraphs (not just the first one) on page one of Blanks' confession were copied. However, even if this conclusion is correct, it does not disprove Deputy Simmons' account of the point when he stopped his interview with Blanks and administered the *Miranda* warnings. At that point in time, it would have been preferable for Simmons to have started fresh, and on the proper form-albeit for the fourth time. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979). However, we cannot say that the procedure he followed-out of exhaustion and frustration-was inherently illegal. The illegality would have been if the copying of the statement from one form to another had been done covertly to make it appear as if warnings were given and waived when they were not. While not commending the cut and copy procedure, we defer to the trial court's findings and conclusions that Blanks was properly warned and that he knowingly and intelligently waived his rights before giving his confession. These points of error are overruled.

In his fifth and sixth points of error, Blanks asserts that the trial court abused its discretion when it overruled his motion to suppress and admitted his confession into evidence because the statement was involuntary in that it was coerced by threats and promises.

Blanks asserts that Simmons threatened to charge him with the murder if he did not tell all he knew. However, Blanks does not point the Court to any support in the record for this argument, and we are unable to find any. The only promise argued by Blanks is that Deputy Simmons stated to Blanks that he could be used as a witness if he could supply more information.

In order for a confession to be rendered involuntary by promises by law enforcement, the appellant must show that the promise (1) was positive; (2) of some benefit to the defendant; (3) made or sanctioned by someone in authority; and (4) of such an influential nature that a defendant would speak untruthfully in response thereto. *Sossamon v. State,* 816 S.W.2d 340, 345 (Tex. Crim.App.1991). Deputy Simmons' purported promise did not specifically promise Blanks any benefits. Although Blanks may have believed that being a witness for the State carries some likelihood of leniency, leniency was never discussed between Simmons and Blanks. Such a vague statement as was made by Deputy Simmons was not of such an influential nature as to encourage Blanks to speak untruthfully about his involvement in the murder of Steve Gavranovic.

The trial court found that Blanks' statement was voluntarily made in the absence of any threat, promise, or other improper inducement on the part of the police officers who obtained those statements. The record supports these findings and conclusions, and we defer to them. The fifth and sixth points of error are overruled.

In his last point of error, Blanks argues that the trial court erred in admitting the testimony from Deputy Simmons regarding the reading of the *Miranda* warnings to him because Deputy Simmons perjured himself at trial in light of conflicting testimony from Deputy Welsh. Simmons testified that he did administer the warnings before the completion of Blanks' statement, at the point Blanks implicated himself, and that Blanks never invoked any of those rights. Simmons could not recall who had witnessed him administer the *Miranda* warnings to Blanks; he thought it might have been Deputy Welsh. Deputy Welsh could not recall whether Blanks initialed the warnings before completing the statement or initialed them at the time he signed the completed statement. Additionally, Welsh did not recall being present when Simmons went over the *Miranda* warnings with Blanks. At a previous suppression hearing where Simmons was under oath and testified to the circumstances surrounding this same statement,[4] he testified that it was definitely Welsh who witnessed the *Miranda* warnings. Also at the same previous hearing, Welsh testified that Blanks initialed the *Miranda* warnings at the time he signed his completed "Statement of a Person in Custody." Blanks argues that none of Deputy Simmons' testimony should have been admitted at trial due to conflicts with Deputy Welsh. There is no legal basis stated for this proposition.

Blanks concludes that the conflicting testimony of the two deputies clearly indicates that he was not properly warned of his *Miranda* rights before his last statement/confession was completed. Blanks argues that "[s]ince the State can not put forth any evidence to prove Miranda warnings were read before the in-custody statement was given, it has not met its burden of proof." Blanks is not specific as to what burden of proof the State has allegedly failed to meet.

In its findings of fact, the trial court found that Simmons was a "credible and reliable witness." We do not believe that the trial court abused its discretion in believing Depu-

---

4. Blanks was originally charged with murder and aggravated robbery. A hearing was held on his motion to suppress the same statement as is in issue in the present case. Although the charges were dropped, the aggravated robbery charge was later refiled against Blanks, which led to this appeal. The statement of facts from the hearing in the first case was admitted into evidence during the motion to suppress hearing in this case.

ty Simmons' testimony. Further, since the earlier suppression hearing was in 1992 and the hearing and trial in the present case was in 1996, it would not be unusual for fading recollections to generate conflicts in testimony. The trial court is in a better position to evaluate the credibility of the witnesses and determine how much weight to give their testimony. Here, the trial court determined that Simmons truthfully recounted the events surrounding the statement and arrest of Blanks. We defer to that determination. Blanks' last point of error is overruled.

The judgment of the trial court is affirmed.