SMITH V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-413-CR

JERRY LYNN SMITH APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant, Jerry Lynn Smith, appeals from his conviction for possession with the intent to deliver a controlled substance.  In two points, he complains that 
the trial court:  (1) abused its discretion by ruling that the statement made by appellant was voluntary; and (2) erred by failing to declare a mistrial after the prosecution made an inappropriate jury argument during closing arguments.
  We affirm.

FACTS

On or about August 10, 2000, residents of the 5400 block of Dartmouth Street called the police and reported a strong smell of ammonia and ether in their neighborhood.  The police discovered that the smell was emanating from a house on Purdue Street.  When the police pulled up in front of the suspect house, they noted that a
 big black tarp hung over the front of the garage where the door would normally be.  
The front door to the house was standing open, but was slammed shut when the police stopped in front of the house.  
The police went to the door and appellant answered it, stating that he lived there.
  The police explained that they were investigating a strong smell of ether and ammonia in the area. 
 Appellant told the officer that he was probably smelling ether because he and a friend had been using the chemical to clean a motorcycle gas tank in preparation for painting it.

Appellant allowed the police to look around the  property.   They noticed that the chemical smell was very strong near the garage.  
The police asked appellant if they could look in the garage and appellant consented. 
 At the back of the garage, officers found a methamphetamine drug lab. 
 
The firefighters on the scene ventilated the area and determined that several propane canisters and 150-gallon ammonia cylinders were the source of the fumes. 
 The police called the narcotics division to dismantle the lab.  

The police placed appellant in the back of the police car and gave him his
 Miranda 
warnings; however, the police did not arrest appellant at that time.  
While he sat in the patrol car, appellant told the officers about the lab and how he had learned to make speed from information he got off the internet. 
 He justified manufacturing and selling drugs because he was disabled and had no other way to make money.  
The police asked appellant if he had been advised of his rights and he said that he had.
 
 They then asked appellant to step into the garage and identify certain components used in the drug lab. 
 Appellant confirmed that he had used the lab on several occasions. 
 
The police then arrested appellant, took him to jail, and booked him. 

The next day, the police interviewed appellant at the police station.   After an initial conversation, appellant agreed to make a written statement.  
Officer Mike Ford typed the statement, included a 
Miranda
 warning on top, and appellant read and signed it with no changes.  The statement described how appellant and “Steve” sold and manufactured the drugs.  Because the police lab had not completed its tests on the chemicals and drugs, the police released appellant 
after he made his statement. 

A few days later, Detective Stan Davis contacted appellant about being a drug informant in further narcotics investigations.  On August 22, 2000, appellant entered into a written contract with the police to be an informant and agreed to provide them information on narcotics.  Appellant did not fulfill the requirements of the contract and was arrested.

The trial court held a pre-trial hearing on appellant’s motion to dismiss and motion to suppress his written and oral inculpatory statements.  The court ruled that appellant gave the statements voluntarily and denied both motions.  Additionally, the trial court ruled that appellant did not have a possessory or proprietary interest in the house that was searched; therefore he lacked standing to contest the search.  The court entered oral findings on the record.   Appellant testified at trial and claimed complete ignorance of the lab and its purpose.  
Despite his willingness to become an informant for the police, appellant claimed to have no knowledge concerning the manufacture of methamphetamine or the sale of drugs.  
Additionally, appellant denied making any incriminating statements to the police when the lab was discovered.  
He also claimed that Officer Ford told him that he would help him if he made a statement.  
Because appellant renewed his objection to the admissibility of his written statement, the trial court submitted an instruction that the jury should not consider the statement if at the time of making it, they found that appellant was induced by a promise to make such a statement.

DISCUSSION

In his first point, appellant complains that
 
his written statement was not made voluntarily because he signed the written statement in order to secure the informant contract with the police.  He contends that his written statement should have been suppressed by the trial court at the pretrial hearing on his motion to suppress.  

At a motion to suppress hearing, the trial court is the trier of facts and the sole judge of the credibility of the witnesses and the weight to be given their testimony.  
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  When reviewing a trial court's ruling on a motion to suppress, we must afford almost total deference to the trial court's application of law to fact questions that turn upon an evaluation of the credibility and demeanor of the witnesses.  
Loserth v. State
, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); 
Guzman
, 955 S.W.2d at 89.  We must view the record evidence and all its reasonable inferences in the light most favorable to the trial court's ruling and sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case.  
Guzman
, 955 S.W.2d at 89.   

We review the denial of a motion to suppress by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).  However, this general rule is inapplicable where, as in this case, the suppression issue has been relitigated by the parties during a trial on the merits.  
See id
.

Where the defendant raises the issue at trial either without objection or with subsequent participation in the inquiry by the State, the defendant has made an election to re-open the evidence, and consideration of the relevant trial testimony is appropriate in our review.  
Id.
  Thus, in the case at bar, because the issue was re-litigated by the parties before the jury, we will consider testimony from the trial itself in addition to testimony from the pre-trial hearings.

A suspect's statement may be used against him when it is freely and voluntarily made without compulsion or persuasion.
  See
 
Tex. Code Crim. Proc. Ann. 
art. 38.21 (Vernon 1979); 
Campos v. State
, 977 S.W.2d 458, 464 (Tex. App.—Waco 1998, no pet.).  Whether a suspect's statement is voluntary is determined from the totality of the circumstances surrounding the giving of his statement.  
Penry v. State
, 903 S.W.2d 715, 748 (Tex. Crim. App. 1995).  A suspect's statement is involuntary if it is induced by a promise that was:  (1) positive; (2) of some benefit to the suspect; (3) made or sanctioned by someone in authority; and (4) of such an influential nature that a defendant would speak untruthfully in response.  
Creager v. State
, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); 
Blanks v. State
, 968 S.W.2d 414, 421 (Tex. App.—Texarkana 1998, pet. ref'd).  
However, the ultimate question is whether the suspect's will was overborne. 
 Creager
, 952 S.W.2d at 856
.

The State argues that the trial court did not err by denying appellant’s motion to suppress the statement because the record supports the trial court’s finding that no promise was made to appellant in exchange for his statement. The trial court heard testimony concerning the voluntariness of the written statement during the hearings on the motions to suppress and dismiss, as well as at the trial on the merits.  Appellant testified in support of the motion and Officer Ford, Officer Davis, and Officer Edward Sherif testified for the State. 

Officer Ford testified that he had a discussion alone with appellant at the River Oaks Police Department the day after they discovered the lab.  After the initial discussion, Officer Ford asked appellant to give him a written statement regarding what happened on August 10, 2000, and appellant agreed.  Officer Ford typed the statement in first person, included a 
Miranda
 warning on the top, and appellant signed it without making any corrections.  Another police officer witnessed the signing of the statement.  Officer Ford stated that he did not make any promises or assurances to appellant in exchange for his statement and that the statement was freely and voluntarily given.

Officer Davis testified that Officer Ford contacted him a day or two after the offense about recruiting appellant to be an informant.  Officer Davis contacted appellant on the phone and met with him twice, and they eventually entered into an informant agreement twelve days after the offense on 
August 22, 2000
.  

Appellant testified that he had no knowledge that there were drugs in the garage and that he did not know how to make drugs.  Appellant stated that the day after he was arrested, Officer Ford came to recruit him as an informant for the police.  Appellant said that Officer Ford told him that “he would help me [appellant] if I gave him a statement.”  Moreover, appellant claimed that Officer Ford told him that the police would not file charges if he gave them a statement.  Appellant insisted that the written statement contained many things that he never said.  Additionally, he claimed that he had not read the statement before he signed it.

Officer Ford did not recall, and denied discussing, the prospect of appellant “becoming an informant” during the interview.  Officer Ford specifically denied telling appellant that he needed “to sign that statement or the part about the deal to become a confidential informant.”  He also expressly denied having appellant sign the statement in order to “have something to hold over him in case he didn’t perform . . . as a confidential informant.” 

In reviewing the record evidence and all reasonable inferences in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion in failing to suppress appellant’s written statement.  Officer Ford repeatedly denied offering appellant the opportunity to become an informant in exchange for appellant’s signed, written statement.  Because the trier of fact is the sole judge of the credibility of the witnesses who testify, the record supports the trial court’s decision to give more weight to Officer Ford and Officer Davis’s testimony than to appellant’s version.  
See Loserth
, 963 S.W.2d at 772;  
Guzman
, 955 S.W.2d at 89.   Moreover, the record supports the jury’s implied finding that the written statement was freely and voluntarily given as shown by the court’s written findings of fact.  We overrule appellant’s first point.

IMPROPER JURY ARGUMENT

In appellant’s second point, he complains that the court erred by failing to declare a mistrial after the prosecution made an improper jury argument.  
During closing arguments, the prosecution stated, “[d]o you believe he’s—that he wasn’t involved in any of this?  If you do, walk him out the door.  Go ahead and do it.  Send him back to wherever he wants to go and he’ll start up another lab.”  Appellant objected, the objection was sustained, and the trial court instructed the jury to disregard the statement.
  
Appellant moved for a mistrial and the trial court denied his motion.
 

Appellant cites 
Cantu v. State
, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997), in support of his argument.  He argues that the prosecution’s comment violated the four-point test for proper jury arguments set out in 
Cantu
.  
Id.  
To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
  Here, the argument was an improper plea to law enforcement.

However, when the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.  
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  Its resolution depends on whether the trial court’s instruction to disregard cured the prejudicial effect, if any, of the improper argument.  
Id.  
Generally, an instruction to disregard impermissible argument cures any prejudicial effect.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 944 (2001); 
Dinkins v. State
, 894 S.W.2d 330, 357 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995).  In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective.  
Wesbrook,
 29 S.W.3d at 115-16; 
Hernandez v. State
, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991), 
cert. denied
, 504 U.S. 974 (1992).  If the instruction cured any prejudicial effect caused by the improper argument, a reviewing court should find that the trial court did not err.  
Dinkins
, 894 S.W.2d at 357;  
Faulkner
, 940 S.W.2d at 312.  Only if the reviewing court determines the instruction was ineffective does the court go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury’s verdict.  
Tex. R. App. P. 
44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

After a review of the record in this case, we find no reason why the court’s instruction to disregard was not effective.  Moreover, appellant does not  present a reason why the instruction was not effective.  Instead, appellant argues that the prosecutor’s statement “violated a substantial right and had a substantial and injurious effect on the jury.”  He states that such a statement was “manifestly harmful” and not cured by a simple instruction, but does not explain why the potential harm was not cured.

The instruction to disregard will be considered effective unless the facts of the case suggest that it would be impossible to undo the impression produced in the mind of the jurors. 
 Waldo v. State
, 
746 S.W.2d 750, 754 (Tex. Crim. App. 1988).
  When there is error, we may consider the following nonexclusive, nondefinitive list of factors in determining the efficacy of curative instructions:  (1) the nature of the error; (2) the persistence of the prosecution in committing it; (3) the flagrancy of the violation; (4) the particular instruction given; (5) the weight of incriminating evidence; and (6) the harm to the accused as measured by severity of the sentence.  
Id. 

Here, the nature of the prosecutor’s comment was the suggestion that appellant would commit the offense again if found not guilty. 
 The prosecution made the comment only once and did not attempt to repeat the content of his argument.  The comment did not inject any new facts into evidence and was not so severe that the court’s instruction to disregard would not cure the potential harm.  Therefore, we overrule appellant’s second point.

CONCLUSION

Having overruled both of appellant’s points, we affirm the judgment of the trial court.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 15, 2004