COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-413-CR
  
JERRY LYNN SMITH                                                              APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
------------
 
FROM THE 213TH 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant, 
Jerry Lynn Smith, appeals from his conviction for possession with the intent to 
deliver a controlled substance. In two points, he complains that the trial 
court: (1) abused its discretion by ruling that the statement made by appellant 
was voluntary; and (2) erred by failing to declare a mistrial after the 
prosecution made an inappropriate jury argument during closing arguments. We 
affirm.
FACTS
        On 
or about August 10, 2000, residents of the 5400 block of Dartmouth Street called 
the police and reported a strong smell of ammonia and ether in their 
neighborhood. The police discovered that the smell was emanating from a house on 
Purdue Street. When the police pulled up in front of the suspect house, they 
noted that a big black tarp hung over the front of the garage where the door 
would normally be. The front door to the house was standing open, but was 
slammed shut when the police stopped in front of the house. The police went to 
the door and appellant answered it, stating that he lived there. The police 
explained that they were investigating a strong smell of ether and ammonia in 
the area. Appellant told the officer that he was probably smelling ether because 
he and a friend had been using the chemical to clean a motorcycle gas tank in 
preparation for painting it.
        Appellant 
allowed the police to look around the property. They noticed that the chemical 
smell was very strong near the garage. The police asked appellant if they could 
look in the garage and appellant consented. At the back of the garage, officers 
found a methamphetamine drug lab. The firefighters on the scene ventilated the 
area and determined that several propane canisters and 150-gallon ammonia 
cylinders were the source of the fumes. The police called the narcotics division 
to dismantle the lab.
        The 
police placed appellant in the back of the police car and gave him his 
Miranda warnings; however, the police did not arrest appellant at that time. 
While he sat in the patrol car, appellant told the officers about the lab and 
how he had learned to make speed from information he got off the internet. He 
justified manufacturing and selling drugs because he was disabled and had no 
other way to make money. The police asked appellant if he had been advised of 
his rights and he said that he had. They then asked appellant to step into the 
garage and identify certain components used in the drug lab. Appellant confirmed 
that he had used the lab on several occasions. The police then arrested 
appellant, took him to jail, and booked him.
        The 
next day, the police interviewed appellant at the police station. After an 
initial conversation, appellant agreed to make a written statement. Officer Mike 
Ford typed the statement, included a Miranda warning on top, and 
appellant read and signed it with no changes. The statement described how 
appellant and “Steve” sold and manufactured the drugs. Because the police 
lab had not completed its tests on the chemicals and drugs, the police released 
appellant after he made his statement.
        A 
few days later, Detective Stan Davis contacted appellant about being a drug 
informant in further narcotics investigations. On August 22, 2000, appellant 
entered into a written contract with the police to be an informant and agreed to 
provide them information on narcotics. Appellant did not fulfill the 
requirements of the contract and was arrested.
        The 
trial court held a pre-trial hearing on appellant’s motion to dismiss and 
motion to suppress his written and oral inculpatory statements. The court ruled 
that appellant gave the statements voluntarily and denied both motions. 
Additionally, the trial court ruled that appellant did not have a possessory or 
proprietary interest in the house that was searched; therefore he lacked 
standing to contest the search. The court entered oral findings on the record.
        Appellant 
testified at trial and claimed complete ignorance of the lab and its purpose. 
Despite his willingness to become an informant for the police, appellant claimed 
to have no knowledge concerning the manufacture of methamphetamine or the sale 
of drugs. Additionally, appellant denied making any incriminating statements to 
the police when the lab was discovered. He also claimed that Officer Ford told 
him that he would help him if he made a statement. Because appellant renewed his 
objection to the admissibility of his written statement, the trial court 
submitted an instruction that the jury should not consider the statement if at 
the time of making it, they found that appellant was induced by a promise to 
make such a statement.
DISCUSSION
        In 
his first point, appellant complains that his written statement was not made 
voluntarily because he signed the written statement in order to secure the 
informant contract with the police. He contends that his written statement 
should have been suppressed by the trial court at the pretrial hearing on his 
motion to suppress.
        At 
a motion to suppress hearing, the trial court is the trier of facts and the sole 
judge of the credibility of the witnesses and the weight to be given their 
testimony. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
When reviewing a trial court's ruling on a motion to suppress, we must afford 
almost total deference to the trial court's application of law to fact questions 
that turn upon an evaluation of the credibility and demeanor of the witnesses. Loserth 
v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Guzman, 955 
S.W.2d at 89. We must view the record evidence and all its reasonable inferences 
in the light most favorable to the trial court's ruling and sustain the trial 
court's ruling if it is reasonably supported by the record and is correct on any 
theory of law applicable to the case. Guzman, 955 S.W.2d at 89.
        We 
review the denial of a motion to suppress by giving almost total deference to a 
trial court's determination of historical facts and reviewing de novo the 
court's application of the law. Carmouche v. State, 10 S.W.3d 323, 327 
(Tex. Crim. App. 2000). In determining whether a trial court's decision is 
supported by the record, we generally consider only evidence adduced at the 
suppression hearing because the ruling was based on it rather than evidence 
introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied, 519 U.S. 1043 (1996). However, this general rule is 
inapplicable where, as in this case, the suppression issue has been relitigated 
by the parties during a trial on the merits. See id.
        Where 
the defendant raises the issue at trial either without objection or with 
subsequent participation in the inquiry by the State, the defendant has made an 
election to re-open the evidence, and consideration of the relevant trial 
testimony is appropriate in our review. Id. Thus, in the case at bar, 
because the issue was re-litigated by the parties before the jury, we will 
consider testimony from the trial itself in addition to testimony from the 
pre-trial hearings.
        A 
suspect's statement may be used against him when it is freely and voluntarily 
made without compulsion or persuasion. See Tex. Code Crim. Proc. Ann. art. 38.21 
(Vernon 1979); Campos v. State, 977 S.W.2d 458, 464 (Tex. App.—Waco 
1998, no pet.). Whether a suspect's statement is voluntary is determined from 
the totality of the circumstances surrounding the giving of his statement. Penry 
v. State, 903 S.W.2d 715, 748 (Tex. Crim. App. 1995). A suspect's statement 
is involuntary if it is induced by a promise that was: (1) positive; (2) of some 
benefit to the suspect; (3) made or sanctioned by someone in authority; and (4) 
of such an influential nature that a defendant would speak untruthfully in 
response. Creager v. State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); Blanks 
v. State, 968 S.W.2d 414, 421 (Tex. App.—Texarkana 1998, pet. ref'd). 
However, the ultimate question is whether the suspect's will was overborne. Creager, 
952 S.W.2d at 856.
        The 
State argues that the trial court did not err by denying appellant’s motion to 
suppress the statement because the record supports the trial court’s finding 
that no promise was made to appellant in exchange for his statement. The trial 
court heard testimony concerning the voluntariness of the written statement 
during the hearings on the motions to suppress and dismiss, as well as at the 
trial on the merits. Appellant testified in support of the motion and Officer 
Ford, Officer Davis, and Officer Edward Sherif testified for the State.
        Officer 
Ford testified that he had a discussion alone with appellant at the River Oaks 
Police Department the day after they discovered the lab. After the initial 
discussion, Officer Ford asked appellant to give him a written statement 
regarding what happened on August 10, 2000, and appellant agreed. Officer Ford 
typed the statement in first person, included a Miranda warning on the 
top, and appellant signed it without making any corrections. Another police 
officer witnessed the signing of the statement. Officer Ford stated that he did 
not make any promises or assurances to appellant in exchange for his statement 
and that the statement was freely and voluntarily given.
        Officer 
Davis testified that Officer Ford contacted him a day or two after the offense 
about recruiting appellant to be an informant. Officer Davis contacted appellant 
on the phone and met with him twice, and they eventually entered into an 
informant agreement twelve days after the offense on August 22, 2000.
        Appellant 
testified that he had no knowledge that there were drugs in the garage and that 
he did not know how to make drugs. Appellant stated that the day after he was 
arrested, Officer Ford came to recruit him as an informant for the police. 
Appellant said that Officer Ford told him that “he would help me [appellant] 
if I gave him a statement.” Moreover, appellant claimed that Officer Ford told 
him that the police would not file charges if he gave them a statement. 
Appellant insisted that the written statement contained many things that he 
never said. Additionally, he claimed that he had not read the statement before 
he signed it.
        Officer 
Ford did not recall, and denied discussing, the prospect of appellant 
“becoming an informant” during the interview. Officer Ford specifically 
denied telling appellant that he needed “to sign that statement or the part 
about the deal to become a confidential informant.” He also expressly denied 
having appellant sign the statement in order to “have something to hold over 
him in case he didn’t perform . . . as a confidential informant.”
        In 
reviewing the record evidence and all reasonable inferences in the light most 
favorable to the trial court's ruling, we hold that the trial court did not 
abuse its discretion in failing to suppress appellant’s written statement. 
Officer Ford repeatedly denied offering appellant the opportunity to become an 
informant in exchange for appellant’s signed, written statement. Because the 
trier of fact is the sole judge of the credibility of the witnesses who testify, 
the record supports the trial court’s decision to give more weight to Officer 
Ford and Officer Davis’s testimony than to appellant’s version. See 
Loserth, 963 S.W.2d at 772; Guzman, 955 S.W.2d at 89. Moreover, the 
record supports the jury’s implied finding that the written statement was 
freely and voluntarily given as shown by the court’s written findings of fact. 
We overrule appellant’s first point.
IMPROPER JURY ARGUMENT
        In 
appellant’s second point, he complains that the court erred by failing to 
declare a mistrial after the prosecution made an improper jury argument. During 
closing arguments, the prosecution stated, “[d]o you believe he’s—that he 
wasn’t involved in any of this? If you do, walk him out the door. Go ahead and 
do it. Send him back to wherever he wants to go and he’ll start up another 
lab.” Appellant objected, the objection was sustained, and the trial court 
instructed the jury to disregard the statement. Appellant moved for a mistrial 
and the trial court denied his motion.
        Appellant 
cites Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997), in 
support of his argument. He argues that the prosecution’s comment violated the 
four-point test for proper jury arguments set out in Cantu. Id. To 
be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or (4) 
plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. 
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. 
State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). Here, the argument was an 
improper plea to law enforcement.
        However, 
when the trial court sustains an objection and instructs the jury to disregard 
but denies a defendant’s motion for a mistrial, the issue is whether the trial 
court erred in denying the mistrial. Faulkner v. State, 940 S.W.2d 308, 
312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g). Its 
resolution depends on whether the trial court’s instruction to disregard cured 
the prejudicial effect, if any, of the improper argument. Id. Generally, 
an instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. 
denied, 532 U.S. 944 (2001); Dinkins v. State, 894 S.W.2d 330, 357 
(Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995). In assessing the 
curative effect of the court’s instruction to disregard, the correct inquiry 
is whether, in light of the record as a whole, the argument was extreme, 
manifestly improper, injected new and harmful facts into the case, or violated a 
mandatory statutory provision and was thus so inflammatory that the instruction 
to disregard was ineffective. Wesbrook, 29 S.W.3d at 115-16; Hernandez 
v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991), cert. denied, 
504 U.S. 974 (1992). If the instruction cured any prejudicial effect caused by 
the improper argument, a reviewing court should find that the trial court did 
not err. Dinkins, 894 S.W.2d at 357; Faulkner, 940 S.W.2d at 312. 
Only if the reviewing court determines the instruction was ineffective does the 
court go on to determine whether, in light of the record as a whole, the 
argument had a substantial and injurious effect or influence on the jury’s 
verdict. Tex. R. App. P. 44.2(b); King 
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).
        After 
a review of the record in this case, we find no reason why the court’s 
instruction to disregard was not effective. Moreover, appellant does not present 
a reason why the instruction was not effective. Instead, appellant argues that 
the prosecutor’s statement “violated a substantial right and had a 
substantial and injurious effect on the jury.” He states that such a statement 
was “manifestly harmful” and not cured by a simple instruction, but does not 
explain why the potential harm was not cured.
        The 
instruction to disregard will be considered effective unless the facts of the 
case suggest that it would be impossible to undo the impression produced in the 
mind of the jurors. Waldo v. State, 746 S.W.2d 750, 754 (Tex. Crim. App. 
1988). When there is error, we may consider the following nonexclusive, 
nondefinitive list of factors in determining the efficacy of curative 
instructions: (1) the nature of the error; (2) the persistence of the 
prosecution in committing it; (3) the flagrancy of the violation; (4) the 
particular instruction given; (5) the weight of incriminating evidence; and (6) 
the harm to the accused as measured by severity of the sentence. Id.
        Here, 
the nature of the prosecutor’s comment was the suggestion that appellant would 
commit the offense again if found not guilty. The prosecution made the comment 
only once and did not attempt to repeat the content of his argument. The comment 
did not inject any new facts into evidence and was not so severe that the 
court’s instruction to disregard would not cure the potential harm. Therefore, 
we overrule appellant’s second point.
CONCLUSION
        Having 
overruled both of appellant’s points, we affirm the judgment of the trial 
court.
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
  
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 15, 2004