ACCEPTED
06-15-00024-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/9/2015 2:16:36 PM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-15-00024-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
11/9/2015 2:16:36 PM
DEBBIE AUTREY
Clerk

_____

RODNEY BOYETT, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH DISTRICT COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT NO. 25506;
HONORABLE WILL BIARD, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young
Lamar County and District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . .    i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .    iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . .    viii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . .    x

ISSUE PRESENTED IN REPLY. . . . . . . . . . . . . . . . . . . . . .    xi

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . .    11

ARGUMENT AND AUTHORITIES

> **ISSUE PRESENTED IN REPLY NO. 1:   THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP WAS SUFFICIENTLY SUPPORTED BY REASONABLE SUSPICION, AND WAS JUSTIFIED.** . . . . . . . . . . . .    12

> **ISSUE PRESENTED IN REPLY NO. 2:   THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE RODNEY BOYETT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; THE APPELLANT'S CONFESSION WAS VOLUNTARY; AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING THE RECORDED STATEMENT/ CONFESSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

**ISSUE PRESENTED IN REPLY NO. 3: THE EVIDENCE WAS SUFFICIENT TO SUBSTANTIATE THE APPELLANT'S, RODNEY BOYETT'S, GUILT OF CRIMINAL CONSPIRACY UNDER ARTICLE 1.15 OF THE TEXAS CODE OF CRIMINAL PROCEDURE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     30

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     35

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . .     35

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . .     36

# INDEX OF AUTHORITIES

**CASES:**                                                                                     **PAGE:**

*Beck v. Ohio*, 379 U.S. 89, 91; 85 S.Ct. 223; 13 L.Ed.2d
  142 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          23

*Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim.
  App. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          19

*Blanks v. State*, 968 S.W.2d 414, 420, 421 (Tex. App.--Texarkana
  1998, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          21,22,29

*Butler v. State*, 990 S.W.2d 298, 302 (Tex. App.--Texarkana
  1999, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          24

*Canada v. State*, 446 S.W.2d 601, 603-04 (Tex. App.--
  Texarkana 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . .          17

*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.
  App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          12,13

*Colvin v. State*, 467 S.W.3d 647 (Tex. App.--Texarkana
  2015, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          19,30

*Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007)
  (citations omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . .          19

*Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel
  Op.] 1979) (op. on reh'g) . . . . . . . . . . . . . . . . . . . . . .          31

*Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.--Beaumont
  2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          14

*Flowers v. State*, 438 S.W.3d 86, 107 (Tex. App.--Texarkana
  2014, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          13

**CASES:** **PAGE:**

*Garcia v. State*, 827 S.W.2d 937, 942 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana 2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Guzman v. State*, 955 S.W.2d 85, 89, 90 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13,23,26

*Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.--Austin 1998, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Herrera v. State*, 241 S.W.3d 520, 525, 526 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Martinez v. State*, 29 S.W.3d 609, 612 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . 15,16

*Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Miller v. State*, 418 S.W.3d 692, 696-97 (Tex. App.--Houston [14th Dist.] 2013, pet. ref'd) . . . . . . . . . . . . . . . . . . 14

*Miranda v. Arizona*, 384 U.S. 436, 442-457, 467-79; 86 S. Ct. 1602; 16 L. Ed. 2d 694 (1966) . . . . . . . . . . . . . . . . 20

*Potts v. State*, 571 S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**CASES:**                                                                  **PAGE:**

*Renfro v. State*, 958 S.W.2d 880, 884 (Tex. App.--Texarkana 1997, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,30

*Rhodes v. State*, 84 S.W.3d 10, 14 (Tex. App.--Texarkana 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,26

*Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana 2009, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,19

*Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*State v. Kerwick*, 393 S.W.3d 270, 275 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18

*State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*State v. Saenz*, 411 S.W.3d 488, 490 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Thompson v. Keohane*, 516 U.S. 99, 113-14; 116 S.Ct. 457; 133 L.Ed.2d 383 (1995) . . . . . . . . . . . . . . . . . . . . . . . 19

*Tyler v. State*, 161 S.W.3d 745, 749 (Tex. App.--Fort Worth 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

*Vanderburg v. State*, 365 S.W.3d 712, 713-14 (Tex. App.-- Texarkana 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 17

**CASES:**                                                    **PAGE:**

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App.
  1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12-13


**STATUTES:**                                                 **PAGE:**

TEX. CODE CRIM. PROC. ART. 1.15 . . . . . . . . . . . . . . . . . . .   11

TEX. CODE CRIM. PROC. ART. 1.15 (West 2005) . . . . . . . .   31

TEX. CODE CRIM. PROC. ART. 14.01(b) (West 2014) . . . . .  23,26,27

TEX. CODE CRIM. PROC. ART. 38.21 . . . . . . . . . . . . . . . . . .  20,26

TEX. R. APP. P. 38.2(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . .

TEX. TRANSP. CODE ANN. §545.060 (West 2011) . . . . . . . .  11,15

TEX. TRANSP. CODE ANN. §545.060 (a) (West 2011) . . . . .   16

TEX. TRANSP. CODE ANN. §545.060 (a)(1)-(2)
  (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13-14

## STATEMENT OF THE CASE

This is a conspiracy case.

Law enforcement officers in Lamar County were notified that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris. *See* RR, pgs. 9, 13. Law enforcement officers had also located a vehicle, a white pickup, that was registered to Rodney Boyett. *See* RR, pg. 14. After surveillance and an investigation, a traffic stop was initiated and a probable cause search of the vehicle (white pickup) revealed pseudoephedrine tablets and other chemicals. Rodney Boyett was arrested and charged with possession of chemicals. *See* RR, pgs. 33-34.

Rodney Boyett filed a motion to suppress which, after a hearing, was denied by the trial court. *See* RR, pg. 170. Rodney Boyett then accepted a plea bargain agreement that assessed a $500.00 fine and sentenced him to five years confinement in the Texas Department of Criminal Justice Institutional Division; however, that was probated for a period of three years. *See* RR, pg. 179. Rodney Boyett timely filed his notice of appeal. *See* CR, pg. 187. The certification included that "the right to appeal the judge's ruling on the motion to suppress." *See* CR, pg. 182.

By this appeal, Rodney Boyett brings 3 issues/points of error.

## STATEMENT REGARDING ORAL ARGUMENT

The State of Texas will waive oral argument. *See* Tex. R. App. P. 38.1(e), 38.2(a)(1).

## ISSUES PRESENTED IN REPLY

**ISSUE PRESENTED IN REPLY NO. 1:** THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP WAS SUFFICIENTLY SUPPORTED BY REASONABLE SUSPICION, AND WAS JUSTIFIED.

**ISSUE PRESENTED IN REPLY NO. 2:** THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE RODNEY BOYETT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; THE APPELLANT'S CONFESSION WAS VOLUNTARY; AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITING THE RECORDED STATEEMNT/CONFESSION.

**ISSUE PRESENTED IN REPLY NO. 3:** THE EVIDENCE WAS SUFFICIENT TO SUBSTANTIATE THE APPELLANT'S, RODNEY BOYETT'S, GUILT OF CRIMINAL CONSPIRACY UNDER ARTICLE 1.15 OF THE TEXAS CODE OF CRIMINAL PROCEDURE.

CAUSE NO. 06-15-00024-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

RODNEY BOYETT, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE 6TH DISTRICT COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT NO. 25506;
HONABLE WILL BIARD, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO HONORABLE SIXTH COURT OF APPEALS:

COMES NOW, the State of Texas, by and through its Lamar County
and District Attorney's Office, files this its Appellee's Brief under Rule 38.2
of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Rodney Boyett will be referred to as "the
appellant" or "Rodney Boyett." The State of Texas will be referred to as
"the State" or "appellee."

-1-

## STATEMENT OF FACTS

### Factual Background.

In the fall of 2013, Lieutenant Anson Amis (Amis) with the sheriff's department had a program that monitored the purchase of pseudoephedrine. *See* RR, pg. 9.  Through that system, he was allowed to "flag" (RR, pgs. 9, 13) people or certain individuals that he thought might have suspicious buying patterns.  *See* RR, pgs. 9, 13.  Amis contacted Leigh Foreman (Foreman) with the Paris Police Department and stated that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris.  *See* RR, pgs. 9, 13.

On September 24, 2013, Foreman became involved in an investigation of Rodney and Jessica Boyett.  *See* RR, pg. 9.  Rodney and Jessica Boyett were married (RR, pg. 9), and they lived in Rattan, Oklahoma.  *See* RR, pg. 14.

According to Amis, Jessica and Rodney Boyett had the same address on their drivers license and were buying pills in the Paris area at different pharmacies in a close timeframe together.  *See* RR, pg. 12.  Foreman believed that they were being deceptive in their buying of pseudoephedrine, which they were purchasing for the use of making methamphetamine.  *See*

RR, pg. 12.

Amis called Foreman and asked if he could go to the CVS Pharmacy out by Wal-Mart, which is at 3710 Lamar Avenue. *See* RR, pgs. 13, 17. Foreman did. *See* RR, pg. 14. The purpose in going to a different pharmacy was to see if Rodney Boyett was going to buy. *See* RR, pg. 14. "We usually call them a pill run." *See* RR, pg. 15.

Amis had located a vehicle, a white pickup, that was registered to Rodney Boyett. *See* RR, pg. 14. The vehicle was in the parking lot, and had Oklahoma tags. *See* RR, pg. 16.

Foreman, Amis and Detective Tommy Moore began surveillance in unmarked vehicles at 3710 Lamar. *See* RR, pg. 16. The pickup left, and they began following the vehicle. *See* RR, pg. 17. The vehicle went to Home Depot, where it stayed for "a short while." *See* RR, pg. 17. Foreman observed both Rodney and Jessica Boyett entered the store, then leave the store and get back into the vehicle. *See* RR, pgs. 18-19. They went back towards Wal-Mart. *See* RR, pg. 19.

The officers continued the surveillance and followed them as they traveled back to Wal-Mart. *See* RR, pg. 19. They were in Wal-Mart, again for a short time, before "exiting Wal-Mart, getting in their vehicle and

leaving." *See* RR, pg. 19. *See also* RR, pg. 21.

The officers followed them to see if they would make any other stops before leaving to go back towards Oklahoma. *See* RR, pg. 21. "They did not." *See* RR, pg. 21.

**Observation of a Traffic violation.**

In about the 1100 block of the northeast loop, Foreman observed a traffic violation, where they failed to maintain a single lane. *See* RR, pg. 21. There was really heavy traffic on the loop, so Foreman waited for them to exit on North Main (i.e. Highway 271) heading northbound; at which time, he initiated a traffic stop. *See* RR, pg. 22.

As Foreman approached on the driver's side, Rodney Boyett was in the driver's seat. *See* RR, pg. 23. Foreman identified himself, explained to Rodney Boyett why he had been stopped and asked for identification. *See* RR, pg. 25. Foreman asked Rodney Boyett to exit the vehicle, so he could speak with him about his activity for the day. *See* RR, pg. 25. Foreman and Rodney Boyett were at the rear of the vehicle. *See* RR, pg. 29.

According to Rodney Boyett, he had been to the CVS at 3710 Lamar, Wal-Mart and Home Depot. *See* RR, pg. 25. Rodney Boyett also said that they had purchased pseudoephedrine at Wal-Mart. *See* RR, pg. 26. Rodney

Boyett also said that he had liquid heat in the vehicle. *See* RR, pgs. 26, 29. Finally, Rodney Boyett told Foreman that "they were good people." *See* RR, pg. 28. *See also* RR, pg. 29.

Detective Moore began speaking with Ms. Boyett. *See* RR, pg. 29. They were at the front of the vehicle on the passenger side. *See* RR, pg. 29. Later, Foreman asked her if they had any ingredients to make methamphetamine, and she said they did not. *See* RR, pg. 30.

Foreman went to their vehicle, and he did search the vehicle (RR, pgs. 30, 32) for the ingredients used to manufacture methamphetamine. *See* RR, pgs. 30. Foreman believed that he had probable cause to believe that there was evidence of a crime in the vehicle. *See* RR, pg. 32. Rodney and Jessica Boyett were detained at that time. *See* RR, pg. 36. *See also* RR, pg. 64 ("they were still in detention.").

**Probable Cause Search and Arrest.**

During the search, Foreman found boxes of ephedrine and pseudoephedrine tablets. *See* RR, pgs. 33, 65. Also, Foreman found two bottles of liquid heat, rubber tubing and there bottles of hydrogen peroxide. *See* RR, pgs. 33, 64. Foreman took possession of those items and placed Rodney and Jessica Boyett under arrest for possession of certain chemicals.

*See* RR, pgs. 33-34, 37.

An actual backup vehicle arrived, and they were placed in the back of that unit because suspects were not transported in unmarked vehicles. *See* RR, pg. 34. They were transported to the Paris Police Department and placed in the booking room. *See* RR, pgs. 37, 65.

**Interviews of Jessica Boyett.**

Jessica Boyett was booked-in first. *See* RR, pg. 37. Foreman asked Jessica Boyett if she wanted to speak with him, and she did. *See* RR, pg. 39. In the CID office (RR, pg. 38), Foreman and Detective Moore interviewed Jessica Boyett first. *See* RR, pg. 36. Foreman read her *Miranda* rights and warning during her two interviews that night. *See* RR, pgs. 38-40.

During the first interview, Jessica Boyett was deceptive about the intended use. *See* RR, pg. 40. "She lied." *See* RR, pg. 40. She did not ask to have a lawyer. *See* RR, pg. 45.

Prior to the second interview, Jessica Boyett indicated that she wanted to speak with us again, and that she wanted to tell the truth. *See* RR, pg. 43. Foreman escorted her back to the CID interview room and gave her the *Miranda* warning, once again. *See* RR, pg. 44.

During the second interview, Jessica Boyett did indicate that the

liquid heat was used to manufacture methamphetamine. *See* RR, pg. 44.

Jessica Boyett said that she had used methamphetamine the previous day by shooting it up with a syringe, and that she (and Rodney) had both used methamphetamine the previous day after he had gotten off work. *See* RR, pg. 44.

Also, Jessica Boyett talked about Rodney Boyett cooking methamphetamine. *See* RR, pg. 45. It was cooked on a shed on their property. *See* RR, pgs. 45, 50. During the interviews, Jessica Boyett said that "she didn't know how to cook, but she had been present while it was cooked, but that she [did] not know how to cook it." *See* RR, pg. 49. *See also* State's Exhibit 2.

**Interview of Rodney Boyett.**

Foreman and Detective Moore decided to interview Rodney Boyett on the following day. *See* RR, pg. 50. Foreman began his interview with Rodney Boyett at approximately 8:30 a.m. that morning. *See* RR, pg. 51. He was "Mirandized." *See* RR, pg. 51.

During the interview, Rodney Boyett talked about his methamphetamine use, since he was 14 years of age. *See* RR, pg. 51. He used it by injection, and he showed a needle mark on his left arm where he

-7-

had used methamphetamine.  *See* RR, pg. 51.

Eventually, Rodney Boyett said that they had a shed where he cooked it.  *See* RR, pg. 52.  He went in to specific detail about how his particular process of cooking methamphetamine, a "Red P."  *See* RR, pg. 52 ("red phosphorous").  *See also* State's Exhibit 1.

**Procedural Background.**

On November 14, 2013, a grand jury in Lamar County returned an original indictment against Rodney Boyett that charged him in two counts with the felony offense of conspiracy to manufacture a controlled substance, namely, methamphetamine of more than one gram but less than four grams. *See* CR, pg. 5.  On April 29, 2014, Rodney Boyett filed his motion to suppress.  *See* CR, pgs. 73-75.

**Pre-Trial Suppression Hearing on February 3, 2015.**

On February 3, 2015, the trial court called cause number 25505, after impaneling a jury the previous day.  *See* RR, pg. 6.  The trial court approved the agreement between counsel as to a motion in limine.  *See* RR, pgs. 6-7. The trial court then proceeded with the motion to suppress.  *See* RR, pg. 7.

The State stipulated that the search of the vehicle was without a warrant, and called its first witness (Foreman).  *See* RR, pg. 8.  During

-8-

Foreman's testimony, the proceedings were interrupted, and the trial court invoked "the Rule" with the exception of the expert-witnesses. *See* RR, pgs. 10-11. Upon the conclusion of Foreman's testimony, the State rested for purposes of the motion to suppress. *See* RR, pg. 71.

The defense presented several witnesses, which included the testimony of Rodney Boyett. *See* RR, pgs. 71-98. Upon the conclusion of the testimony from the defense witnesses, the trial court ruled, "[b]ased on the totality of the evidence that the Court has heard and considered, the Court is going to deny the Motion to Suppress." *See* RR, pg. 170.

**Subsequent Proceedings.**

Subsequently, the State abandoned count 2 in the original indictment, and the trial court accepted a plea bargain agreement. *See* RR, pg. 178. The trial court then found Rodney Boyett guilty and sentenced him to five (5) years in the Texas Department of Criminal Justice Institutional Division but placed him on community supervision for a period of three (3) years. *See* RR, pg. 179. The trial court assessed a $500.00 fine. *See* RR, pg. 179.

In addition, the trial court approved the portion of the plea bargain agreement that allowed Rodney Boyett to appeal any pre-trial motions, including the motion to suppress. *See* RR, pg. 179. On February 3, 2015,

the trial court signed its judgment of conviction by court--waiver of jury trial. *See* CR, pgs. 188-189.

On February 4, 2015, Rodney Boyett timely filed his notice of appeal. *See* CR, pg. 187. The trial court's certification specifically included that "Defendant shall have the right to appeal the judge's ruling on the motion to suppress and all pretrial motions." *See* CR, pg. 182.

**Background in this Court of Appeals.**

On or about February 10, 2015, Rodney Boyett filed his notice of appeal in this Court. By electronic filing or about March 31st, the District Clerk of Lamar County filed the Clerk's Record. The official court reporter filed the Reporter's Record on or about July 7th along with the exhibits on or about July 13, 2015.

The appellant (Rodney Boyett) filed a motion to extend time to file his brief, which this Court granted on or about July 27, 2015. The appellant then filed his brief on September 8, 2015.

The State sought, and was granted, its motion to extend time to file its brief. The State will be filing its brief on November 9, 2015.

## SUMMARY OF THE ARGUMENT

In summary, the trial court did not err in denying the appellant's, Rodney Boyett's, motion to suppress and the appellant's three (3) issues/points of error should be overruled for the following reasons:

(1)    The traffic stop was sufficiently supported by reasonable suspicion on the basis of (a) section 545.060 of the Texas Transportation Code and (b) the officers' investigation of the pharmacy logs of purchases of pseudoephedrine in Lamar County.

(2)    The appellant's arrest without a warrant was sufficiently supported by probable cause; and after Rodney Boyett's lawful arrest, his recorded statement/confession was voluntary.  Because the appellant's arrest was lawful and his statement/confession was voluntary, the trial court did not abuse its discretion in admitting State's Exhibit 1 during the suppression hearing on February 3, 2015.

(3)    Finally, the evidence was sufficient to substantiate the appellant's guilt of criminal conspiracy under article 1.15 of the Texas Code of Criminal Procedure.  The judicial confession contained with the written plea admonishments established that Rodney Boyett "committed and [was]

guilty of each and every act as alleged" in the charging instrument.  *See* CR, pg. 180.  Thus, the final judgment of conviction should be affirmed.

## ARGUMENT AND AUTHORITIES

**ISSUE PRESENTED IN REPLY NO. 1:   THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE TRAFFIC STOP WAS SUFFICIENTLY SUPPORTED BY REASONABLE SUSPICION, AND WAS JUSTIFIED.**

A.      **Standard of Review:  Motion to Suppress.**

This Court reviews a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review.  *See Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana 2010, pet. ref'd).; *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana 2009, pet. ref'd). Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, this Court affords almost total deference to its determination of facts supported by the record.  *See State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  This Court affords the same deference to a trial court's rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor.  *See Villarreal*

*v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). This Court reviews *de novo* the trial court's application of the law and determination of questions not turning on credibility. *See Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, this Court is obligated to uphold the denial of the appellant's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *See Flowers v. State*, 438 S.W.3d 86, 107 (Tex. App.--Texarkana 2014, pet. ref'd) (citing *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

B.      **Section 545.060 of the Texas Transportation Code.**

Section 545.060 of the Texas Transportation Code stated in pertinent part that "an operator on a roadway divided into two or more clearly marked lanes for traffic:  (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made

-13-

safely." *See* Tex. Transp. Code Ann. § 545.060(a)(1)-(2) (West 2011). This statute is violated only when the vehicle's movement is unsafe.[1] *See Miller v. State*, 418 S.W.3d 692, 696-97 (Tex. App.--Houston [14th Dist.] 2013, pet. ref'd); *Ehrhart v. State*, 9 S.W.3d 929, 930 (Tex. App.--Beaumont 2000, no pet.); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.--Austin 1998, pet. ref'd).

C.      **Application of Law to the Facts in the Present Case.**

1.      **The Evidence Supported the Trial Court's Finding of Fact and Conclusion of Law that the Vehicle's Movement Was Unsafe.**

In the present case, Foreman testified during the suppression hearing to the following:

> Q.      So what happened next?
>
> A.      We followed them to see if they would make any other stops before leaving to go back towards Oklahoma. They did not. In about the 1100 block of the northeast loop I observed a traffic violation where they failed to maintain a single lane, which is described as vehicles left side tires -- they were in the right lane, and the vehicles left side tires crossed over the center line into the left lane before going back.
>
> Q.      Okay. Is that a traffic violation under the Safety Code In the State of Texas?

---

[1] *See* RR, pg. 141 ("The holding here and the argument that I want to make to the Court is that the language in this statute is that there has to be testimony that there was an unsafe failure to stay in a lane."). *See also* RR, pg. 146 ("there was no testimony that it was unsafe.").

A.  Under the Transportation Code.

Q.  I'm sorry.  Transportation Code?

A.  Yes.

*See* RR, pgs. 21-22.

Although Rodney Boyett contended in his brief that "Foreman's description of what he saw was insufficient to fully describe a violation of § 545.060[,]"[2] the evidence could have supported the trial court's finding that the vehicle movement was unsafe.  *See Tyler v. State*, 161 S.W.3d 745, 749 (Tex. App.--Fort Worth 2005, no pet.) (holding that the evidence supports the trial court's implicit finding that appellant's act of moving out of his lane of traffic, "straddling" the white line separating the traveling lane from the shoulder, and "erratically" re-entering his lane of traffic at an angle was unsafe and therefore a violation of section 545.060).  In *Tyler*, the court of appeals held that the officer "could have stopped appellant because he saw him fail to maintain a single lane of traffic."  *See id* (citing *Martinez v. State*, 29 S.W.3d 609, 612 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) (holding that it was not unreasonable for the officer to conclude appellant's swerve onto the shoulder of a busy highway in the early hours of the morning was unsafe).

[2] *See generally* Appellant's Brief, pg. 30.  *See also* RR, pgs. 141, 146.

Similarly, here, the evidence could have supported the trial court's finding and conclusion of law (CR, pgs. 196, 199) that the vehicle movement was unsafe because Foreman testified that "there was really heavy traffic" still on the Loop. *See* RR, pg. 22. Also, Foreman testified that he "waited for them to exit on North Main headed northbound at which time I initiated a traffic stop." *See* RR, pg. 22. That testimony was sufficient for the trial court to make finding of fact number 9. *See* CR, pg. 196. Further, Foreman's testimony was sufficient to support the trial court's third conclusion of law that "Mr. Boyett moved from his lane when such movement could not have been made safely." *See* CR, pg. 199.

As in *Martinez*, it was not unreasonable for Foreman to conclude that the vehicle's left side tires crossing over the center line was unsafe. *See Martinez*, 29 S.W.3d at 612. In conclusion, Foreman could have stopped the appellant, Rodney Boyett, because he saw him fail to maintain a single lane of traffic. *See Tyler*, 161 S.W.3d at 749; Tex. Transp. Code Ann. § 545.060(a) (West 2011). The stop was justified, and that the trial court properly denied the appellant's motion to suppress. *See Martinez*, 29 S.W.3d at 612.

2. **The Trial Court Could Have Found Additional Reasonable Suspicion.**

In his brief, Rodney Boyett claimed that the information about pseudoephedrine purchases did not amount to reasonable suspicion, but a court may find reasonable suspicion even though "each fact in isolation may be insufficient." *See State v. Kerwick*, 393 S.W.3d 270, 275 (Tex. Crim. App. 2013). In the present case, the trial court heard Foreman's testimony that in the fall of 2013, Lieutenant Anson Amis with the sheriff's department had a program that monitored the purchase of pseudoephedrine. *See* RR, pg. 9. Through that system, he was allowed to "flag" (RR, pgs. 9, 13) people or certain individuals that he thought might have suspicious buying patterns. *See* RR, pgs. 9, 13. Through that system and the investigation of pharmacy logs, law enforcement in Lamar County have lawfully obtained search warrants of residences. *See Canada v. State*, 446 S.W.2d 601, 603-04 (Tex. App.--Texarkana 2014, no pet.); *Vanderburg v. State*, 365 S.W.3d 712, 713-14 (Tex. App.--Texarkana 2012, no pet.).

When Amis contacted Foreman and stated that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris (RR, pgs. 9, 13), Foreman testified that he believed Jessica Boyett and

Rodney Boyett were being deceptive in their buying of pseudoephedrine, and that they were purchasing pseudoephedrine for the use of making methamphetamine. *See* RR, pg. 12. When Foreman observed the Boyett's vehicle make stops at pharmacies, he had developed reasonable suspicion of a "pill run." *See* RR, pg. 15 ("We usually call them a pill run.").

While the fact of the pseudoephedrine purchase at CVS located at 507 Clarksville in downtown Paris (RR, pgs. 9, 13), in isolation, may have been insufficient, the trial court could have found reasonable suspicion because the officers observed stops at other pharmacies, and Foreman articulated specific facts that supported a "pill run." *See Kerwick*, 393 S.W.3d at 275. Because the trial court could have found reasonable suspicion on that additional basis, Rodney Boyett's argument in his brief should be rejected. *See* Appellant's Brief, pgs. 33-34. Accordingly, the appellant's first issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 2: THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE RODNEY BOYETT'S ARREST WAS SUPPORTED BY PROBABLE CAUSE; THE APPELLANT'S CONFESSION WAS VOLUNTARY; AND THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ADMITING THE RECORDED STATEEMNT/CONFESSION.**

A.    **Standard of Review.**

"[T]he trial court is the 'sole and exclusive trier of fact and judge of the credibility of the witnesses' and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a confession." *See Colvin v. State*, 467 S.W.3d 647 (Tex. App.--Texarkana 2015, pet. ref'd) (citing *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007) (citations omitted); *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973)).    Thus, in reviewing the trial court's factual determination of the circumstances surrounding the interrogation, this Court gives almost total deference to the trial court.    *See Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011).    However, because the question of whether a reasonable person would feel that he was not free to terminate the questioning and leave is a mixed question of law and fact that does not depend on the trial court's credibility determination, this Court employs a de novo standard when evaluating this question.    *See Thompson v. Keohane*, 516 U.S. 99, 113-14; 116 S.Ct. 457; 133 L.Ed.2d 383 (1995); *State v. Saenz*, 411 S.W.3d 488, 490 (Tex. Crim. App. 2013).

-19-

**B.** **This Court Should Give Almost Total Deference to the Trial Court, Which Did Not Abuse its Discretion in Admitting the Recorded Statement/Confession in State's Exhibit 1.**

With his second issue/point of error, Rodney Boyett alleged that the trial court erred when it denied the appellant's motion to suppress his recorded statement because (1) it was given in response to custodial interrogation by the police; (2) it was obtained as a result of his illegal arrest; and (3) it was not shown to be freely and voluntarily made without compulsion or persuasion as required by article 38.21 of the Texas Code of Criminal Procedure. *See* Appellant's Brief, pg. 44.

**1.** **The Appellant Had the Initial Burden of Proving that His Statement Was the Product of "Custodial Interrogation".**

The United States Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *See Miranda v. Arizona*, 384 U.S. 436, 442-457, 467-79; 86 S. Ct. 1602; 16 L. Ed. 2d 694 (1966); *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). At trial, the defendant bears the initial burden of proving that a statement was the product of "custodial interrogation." *See Herrera*, 241 S.W.3d at 526.

The mere filing of a motion to suppress does not thrust a burden on the State to show compliance with *Miranda . . .* warnings *unless and until* the defendant proves that the statements he wishes to exclude were the product of custodial interrogation. Thus, the State has no burden at all unless '*the record as a whole clearly establishe[s]*' that the defendant's statement was the product of custodial interrogation by an agent for law enforcement. It is the defendant's initial burden to establish those facts on the record.

*See id* (italics added in the opinion).

In the present case, Rodney Boyett had the initial burden of proving that his statement was the product of "custodial interrogation" at trial. *See id.* Assuming that Rodney Boyett met his initial burden, the trial court did not abuse its discretion in admitting the statement during the suppression hearing. *See Blanks v. State*, 968 S.W.2d 414, 420 (Tex. App.--Texarkana 1998, pet. ref'd). In *Blanks*, an aggravated robbery case, this Court reasoned that:

> We agree with [the appellant] Blanks that, at the time he made oral statements which implicated himself, the inquiry turned into a custodial interrogation. This is because at that point and time there was probable cause to arrest Blanks, and he was certainly a focus of the investigation. However, [officer] Simmons testified, and the trial court found, that Blanks was immediately given the statutory warnings before any other statements were made. The inculpatory statements contained in the "Statement of a Person in Custody" were taken after Blanks had received the appropriate warnings and waived his rights. Although Blanks was in custody, he was properly warned before giving the statement which was admitted at trial. The

trial court did not abuse its discretion in admitting the statement.

*See id.*

As in *Blanks*, at the time Rodney Boyett made the oral statements in State's Exhibit 1 which implicated himself, Foreman's inquiry had turned into a custodial interrogation. *See id.* As in *Blanks*, this is because at that point and time, there probable cause to arrest Rodney Boyett. *See id.* However, Foreman testified that Rodney Boyett was given the statutory warnings[3] before any other statement was made. *See id.* *See also* RR, pg. 51; State's Exhibit 1. As in *Blanks*, the inculpatory statements contained in State's Exhibit 1 were taken after Rodney Boyett had received the appropriate warnings and waived his rights. *See Blanks*, 968 S.W.2d at 420. Although Rodney Boyett was in custody, he was properly warned before giving the statement, *see id*, which was admitted during the suppression hearing. *See* RR, pg. 57.

As in *Blanks*, the trial court did not abuse its discretion in admitting the statement in State's Exhibit 1. *See Blanks*, 968 S.W.2d at 420. This Court should hold accordingly.

---

[3] *See* State's Exhibit 1, beginning at 00:47.

-22-

2.      **The Appellant's Arrest Was Supported by Probable Cause, And Not Illegal.**

a.      **Applicable Law:  Probable Cause.**

With the second sub-part of his second issue/point of error, Rodney Boyett contended in his brief that his recorded statement/confession was obtained, and was tainted, by his illegal/unlawful arrest because "there was a lack of probable cause to support the warrantless arrest."  *See* Appellant's Brief, pg. 44.  But, article 14.01 of the Texas Code of Criminal Procedure provided that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."  *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2014); *Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997).

In *Guzman*, the Texas Court of Criminal Appeals held that the test for probable cause for a warrantless arrest is:

> "Whether at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense."

*See Guzman*, 955 S.W.2d at 90.  *See also Beck v. Ohio*, 379 U.S. 89, 91; 85 S.Ct. 223; 13 L.Ed.2d 142 (1964) ("whether at that moment the facts and circumstances within their knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.").

In determining whether probable cause existed, this Court's evaluation of the facts surrounding the event is completely objective. *See Rhodes v. State*, 84 S.W.3d 10, 14 (Tex. App.--Texarkana 2002, no pet.) (citing *Garcia v. State*, 827 S.W.2d 937, 942 (Tex. Crim. App. 1992)). When several officers are involved in investigating a crime, the sum of information known to cooperating officers at the time of arrest is to be considered in determining whether probable cause to arrest existed. *See Butler v. State*, 990 S.W.2d 298, 302 (Tex. App.--Texarkana 1999, no pet.).

b. **Sufficient Probable Cause Existed in the Present Case.**

In applying the law to the present case, several officers (Foreman, Amis, Moore) in Lamar County were involved in investigating a crime that began when Amis contacted Foreman and stated that Jessica Boyett had just purchased pseudoephedrine at CVS located at 507 Clarksville in downtown Paris. *See* RR, pgs. 9, 13. Amis had located a vehicle, a white pickup, that was registered to Rodney Boyett. *See* RR, pg. 14. The officers began surveillance in unmarked vehicles at 3710 Lamar. *See* RR, pg. 16. When the white pickup left, the officers began following the vehicle. *See* RR, pg.

17. The vehicle went to Home Depot, where it stayed for "a short while." *See* RR, pg. 17. When the vehicle went back towards Wal-Mart (RR, pg. 19), the officers continued their surveillance and followed them as they traveled back to Wal-Mart. *See* RR, pg. 19. They were in Wal-Mart, again for a short time, before "exiting Wal-Mart, getting in their vehicle and leaving." *See* RR, pg. 19. *See also* RR, pg. 21.

The officers followed them to see if they would make any other stops before leaving to go back towards Oklahoma. *See* RR, pg. 21. "They did not." *See* RR, pg. 21. When they did not, Foreman, who already had sufficient reasonable suspicion for a "pill run" (RR, pg. 15), initiated a lawful traffic stop on Highway 271, which was the highway that leads back to Oklahoma. *See* RR, pg. 22.

During the traffic stop, Foreman and Rodney Boyett conversed at the rear of the vehicle (RR, pg. 29). According to Foreman, this conversation was "approximately five, no longer than ten" minutes, a reasonable time. *See* RR, pg. 31. During their conversation, Rodney Boyett said that they had purchased pseudoephedrine at Wal-Mart. *See* RR, pg. 26. Rodney Boyett also said that he had liquid heat in the vehicle. *See* RR, pgs. 26, 29.

With that information, Foreman had sufficient probable cause to

search the vehicle. *See* RR, pgs. 30, 32. According to Foreman's testimony, he believed that he had probable cause to believe that there was evidence of a crime in the vehicle. *See* RR, pg. 32.

The probable cause search revealed two boxes of ephedrine, pseudoephedrine tablets that were consistent with the purchases that Amis had "flagged." *See* RR, pg. 33. The search also revealed two bottles of liquid heat, rubber tubing and three bottles of hydrogen peroxide. *See* RR, pg. 33. Foreman then took possession of these items and placed Rodney Boyett under arrest for possession of certain chemicals. *See* RR, pgs. 33-34.

When the facts surrounding the investigation and traffic stop of September 24, 2013 were viewed objectively, *see Rhodes*, 84 S.W.3d at 14, sufficient probable cause existed for Foreman to place Rodney Boyett under arrest without a warrant. *See generally* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2014). Foreman's surveillance of the vehicle, which included stops at other pharmacies (other than the CVS at 507 Clarksville), provided Foreman with sufficient probable cause to believe that pseudoephedrine had been purchased and was within the vehicle at the time of the lawful traffic stop. Foreman's probable cause search of the vehicle, which included pseudoephedrine tablets from pharmacies that Amis had

"flagged," established that Rodney Boyett had committed an offense in Foreman's presence or within his view on September 24, 2013 in Paris, Lamar County, Texas. Therefore, Foreman was authorized to arrest Rodney Boyett without a warrant. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2014); *Guzman*, 955 S.W.2d at 90.

That arrest without a warrant was lawful, and supported by sufficient probable cause. Therefore, the appellant's second issue/point of error should be overruled.

3. **<u>The Statement/Confession Was Voluntarily Given</u>**.

With the third and final sub-part of his second issue/point of error, Rodney Boyett contended that the trial court erred when it denied his motion to suppress because it was not shown to be freely and voluntarily made without compulsion or persuasion as required by Article 38.21 of the Texas Code of Criminal Procedure. *See* Appellant's Brief, pg. 44. In this regard, Rodney Boyett alleged that (1) he was expressly denied access to counsel; and (2) was threatened with loss of his vehicle unless he told the officer what the officer wanted to hear. *See* Appellant's Brief, pg. 45. *See also* Appellant's Brief, pg. 49 ["Appellant clearly described a threat (loss of pickup) that would make his decision to give up his right to remain silent"].

(a)     **Allegedly Denied Access to Counsel.**

In the present case, Foreman testified that he did not hear from any of the police officers that Rodney Boyett had asked for a lawyer overnight. *See* RR, pgs. 70-71. Also, Foreman testified to the following:

> Q.      Okay. Now, did Mr. Boyett ever ask for a lawyer?
>
> A.      No.
>
> Q.      Did he ever ask you, like Mrs. Boyett did, about what might happen down the road?
>
> A.      I don't believe he did.

*See* RR, pg. 52.

As the "sole and exclusive trier of fact and judge of the credibility of the witnesses," the trial court was in the best position to judge Foreman's credibility and that of Rodney Boyett who allegedly said, "I want a lawyer" to some unidentified person. *See* RR, pgs. 77-79. Even if true, Rodney Boyett did not ask for a lawyer when he was given his statutory and *Miranda* warnings by Foreman. *See* State's Exhibit 1, beginning at 00:47. Obviously, the trial resolved that Rodney Boyett was not denied access to counsel, and that implicit/implied finding should be given deference by this Court.

(b) **Allegedly Threatened With the Loss of a Vehicle.**

In order for a confession to be rendered involuntary by promises by law enforcement, the appellant must show that the promise (1) was positive; (2) of some benefit to the defendant; (3) made or sanctioned by someone in authority; and (4) of such an influential nature that a defendant would speak untruthfully in response thereto. *See Blanks*, 968 S.W.2d at 421 (citing *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex. Crim. App. 1991)); *Renfro v. State*, 958 S.W.2d 880, 884 (Tex. App.--Texarkana 1997, pet. ref'd).

Here, Rodney Boyett alleged that he was threatened with the loss of his vehicle, and that he clearly described a threat (loss of his pickup). *See* Appellant's Brief, pgs. 45, 49. According to Rodney Boyett, "[t]hat was before we got in the interrogation room. It was in the hallway." *See* RR, pg. 81. However, Foreman testified to the following question and answer:

> Q. BY MS. POLLARD: Okay. So I'm just going to ask you a wrap-up question. In your talking or Detective Moore talking to Jessica and Rodney Boyett, at any point in time outside the CID -- and I'm talking about on the scene on the road side, in the PD in the book-in room, on the way to the book-in room. At any point in time did you threaten or promise Jessica or Rodney Boyett anything if they would talk?
>
> A. No.

*See* RR, pg. 58.

Again, the trial court was the "sole and exclusive trier of fact and judge of the credibility of the witnesses." *See Colvin*, 467 S.W.3d at 647. As such, the trial court was in the best position to judge the credibility of the witnesses, and the trial court could have believed Foreman's testimony, in whole or in part, over that of Rodney Boyett. Further, it could have resolved that any promise over the loss of a pickup did not rise to the level of an "unequivocal conditional agreement" whereby in exchange for a confession Foreman would see to it that the pickup was returned to Rodney Boyett. *See Renfro*, 958 S.W.2d at 884.

In the end, the trial resolved that the statement/confession was given voluntarily, and that implicit/implied finding should be given deference by this Court. Accordingly, the appellant's second issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 3: THE EVIDENCE WAS SUFFICIENT TO SUBSTANTIATE THE APPELLANT'S, RODNEY BOYETT'S, GUILT OF CRIMINAL CONSPIRACY UNDER ARTICLE 1.15 OF THE TEXAS CODE OF CRIMINAL PROCEDURE.**

A. **Standard of Review: Article 1.15 of the Texas Code of Criminal Procedure.**

It is well settled that a judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea, and to satisfy the requirements of

article 1.15 of the Texas Code of Criminal Procedure. *See Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g); *Potts v. State*, 571 S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1978). *See also* Tex. Code Crim. Proc. Ann. art. 1.15 (West 2005).

B.     **Application of Law to the Judicial Confession in the Present Case.**

Among the written plea admonishments (CR, pgs. 170-181), Rodney Boyett signed a judicial confession, which reflected in pertinent part the following:

> Upon my oath I swear my true name is RODNEY BOYETT and I request the papers in this cause reflect my true name. I am <u>35</u> years of age. I have read (or have had read to me) the indictment or information filed in this case and same has been reviewed with me by my attorney and I understand all matters contained therein; and **I committed and am guilty of each and every act as alleged therein**, except those acts expressly waived by the State.[4]  All of the facts alleged in the indictment or information are true and correct. I am guilty of the offense(s) charged as well as all lesser included offenses.
>
> *     *     *

*See* CR, pg. 180 (bold type added for emphasis).

---

[4] The State abandoned Count 2 (RR, pgs. 173, 176) in the indictment, which charged in pertinent part that Rodney Boyett "in Lamar County, Texas on or about September 24, 2013, did then and there, with intent to unlawfully manufacture a controlled substance, namely, Methamphetamine, possess or transport a chemical precursor, to-wit: pseudoephedrine, Against the peace and dignity of the State." *See* CR, pg. 5.

At the plea hearing, the following exchange then occurred in open court:

THE COURT: In the written plea admonishment, each of you executed what's called a judicial confession. This is the evidence the State of Texas will introduce in each case in order to prove your guilt. By executing that document, each of you are giving up and waiving your right against self-incrimination. Do you understand?

MS. BOYETT: Yes.

MR. BOYETT: Yes.

THE COURT: Okay. Mr. Haslam, have you explained these documents to your clients?

MR. HASLAM: I have.

THE COURT: In your opinion do you believe each of them understand their admonishments, their rights, and consequences of their pleas?

MR. HASLAM: I do.

THE COURT: It's the Court's understanding in -- and the plea agreement is identical, isn't it?

MS. POLLARD: Yes, Your Honor.

THE COURT: It's the Court's understanding in exchange for your plea of guilty, Mr. and Ms. Boyett, as to Count One the State is going to abandon Count Two in each case. The State's recommendation for punishment is five years confinement in the Texas Department of Criminal Justice Institutional Division; however, that will be probated for a period of three years and a $500 fine. In addition, the State and

-- the State's and your attorney -- part of the plea agreemetn is that you have the right to appeal any pre-trial matters in each of the cases, including the Motion to Suppress that was heard this morning that the Court denied. Is that your understanding as well?

MS. BOYETT: Yes.

MR. BOYETT: Yes.

THE COURT: Is that your understanding, Mr. Haslam?

MR. HASLAM: Yes, Your Honor.

THE COURT: Does either side have any reason to believe the Defendants are incompetent?

MS. POLLARD: No, Your Honor.

MR. HASLAM: No.

THE COURT: Okay. Ms. Boyett, to the allegations contained in the indictment, how do you plead -- as to the allegations contained in the indictment as to Count One, how do you plead, guilty or not guilty?

MS. BOYETT: Guilty.

THE COURT: And, Mr. Boyett, as to the allegations contained in your indictment as to Count One, how do you plead, guilty or not guilty?

MR. BOYETT: Guilty.

* * *

*See* RR, pgs. 175-177.

-33-

In addition to the open plea of guilty, the trial court admitted into evidence "the plea papers," which included the admonishments and judicial confession (marked as State's Exhibit No. 1). *See* RR, pg. 178. The "plea papers" were also filed with the District Clerk of Lamar County and made a part of the Clerk's record in this appellate proceeding. *See* CR, pgs. 170-181. Because the written judicial confession, as evidence, was sufficient to substantiate Rodney Boyett's guilt of criminal conspiracy, the appellant's third issue/point of error should be overruled.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon final submission of the above-styled and numbered cause without oral argument, this Court affirm the trial court's final judgment of conviction in all respects; adjudge court costs against the appellant; and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
       Gary D. Young, County Attorney
       SBN# 00785298
       gyoung@co.lamar.tx.us

**ATTORNEYS FOR THE STATE OF TEXAS**

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 8423 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the Appellee's (State's) Brief has been served on the 9th day of November, 2015 upon the following:

Michael Mowla
445 E. FM 1382, No. 3-718
Cedar Hill, TX   75104
michael@mowlalaw.com

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

-36-